# United States Court of Appeals for the Federal Circuit

———————————

**CALIFORNIA STEEL INDUSTRIES, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

———————————

2021-2172

———————————

Appeal from the United States Court of International Trade in 1:21-cv-00015-MMB, Judge M. Miller Baker.

-------------------------------------------------

**NORTH AMERICAN INTERPIPE, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

—————————————

2021-2180

—————————————

Appeal from the United States Court of International
Trade in No. 1:20-cv-03825-MMB, Judge M. Miller Baker.

--------------------------------------------------

**EVRAZ INC. NA,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

—————————————

2021-2181

—————————————

Appeal from the United States Court of International
Trade in No. 1:20-cv-03869-MMB, Judge M. Miller Baker.

--------------------------------------------------

**AM/NS CALVERT LLC,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

————————————

2021-2182

————————————

Appeal from the United States Court of International Trade in No. 1:21-cv-00005-MMB, Judge M. Miller Baker.

-------------------------------------------------

**VALBRUNA SLATER STAINLESS, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**ELECTRALLOY/G.O. CARLSON,**
*Defendant-Appellant*

————————————

2021-2183

————————————

4                  CALIFORNIA STEEL INDUSTRIES, INC. v. US

Appeal from the United States Court of International Trade in No. 1:21-cv-00027-MMB, Judge M. Miller Baker.

-------------------------------------------------

**VOESTALPINE HIGH PERFORMANCE METALS CORP., EDRO SPECIALTY STEELS, INC.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**ELECTRALLOY/G.O. CARLSON, CRUCIBLE INDUSTRIES LLC, ELLWOOD CITY FORGE COMPANY, ELLWOOD SPECIALTY STEEL,**
*Defendants-Appellants*
_____

2021-2185
_____

Appeal from the United States Court of International Trade in No. 1:21-cv-00093-MMB, Judge M. Miller Baker.
_____

Decided: September 8, 2022
_____

SANFORD M. LITVACK, Chaffetz Lindsey LLP, New York, NY, argued for all plaintiffs-appellees. Plaintiff-appellee California Steel Industries, Inc. also represented by ROBERT MATTHEW BURKE, ANDREW POPLINGER.

CRAIG A. LEWIS, Hogan Lovells US LLP, Washington,

DC, for plaintiffs-appellees North American Interpipe, Inc., Evraz Inc. NA, Valbruna Slater Stainless, Inc. Also represented by HAROLD DEEN KAPLAN, NICHOLAS LANEVILLE.

ROBERT ALAN LUBERDA, Kelley Drye & Warren, LLP, Washington, DC, for plaintiff-appellee AM/NS Calvert LLC. Also represented by JOSHUA MOREY, PAUL C. ROSENTHAL.

MATTHEW MOSHER NOLAN, ArentFox Schiff LLP, Washington, DC, for plaintiffs-appellees voestalpine High Performance Metals Corp., Edro Specialty Steels, Inc. Also represented by JESSICA R. DIPIETRO, NANCY NOONAN, LEAH N. SCARPELLI.

ANN MOTTO, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY, STEPHEN CARL TOSINI.

JAMES EDWARD RANSDELL, IV, Cassidy Levy Kent (USA) LLP, Washington, DC, argued for defendants-appellants. Also represented by THOMAS M. BELINE, NICOLE BRUNDA, CHASE DUNN, JACK ALAN LEVY; MICHELLE ROSE AVRUTIN, BENJAMIN JACOB BAY, NICHOLAS J. BIRCH, CHRISTOPHER CLOUTIER, ELIZABETH DRAKE, WILLIAM ALFRED FENNELL, LUKE A. MEISNER, KELSEY RULE, ROGER BRIAN SCHAGRIN, Schagrin Associates, Washington, DC; JOHN ROBERT MAGNUS, TradeWins LLC, Washington, DC; MATTHEW MCCONKEY, CHARLES ALAN ROTHFELD, Mayer Brown LLP, Washington, DC.

_____

Before MOORE, *Chief Judge*, NEWMAN and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

HUGHES, *Circuit Judge.*

Before the United States Court of International Trade, several domestic importers challenged the United States Department of Commerce's denials of their requests to be excluded from paying certain national security tariffs and to obtain refunds for such paid tariffs. Domestic steel producers United States Steel Corporation, Electralloy/G.O. Carlson, Crucible Industries LLC, Ellwood City Forge Company, and Ellwood Specialty Steel moved to intervene as of right, arguing that these exclusion-request disputes implicated their interests. The Court of International Trade denied their motions. *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313 (Ct. Int'l Trade 2021) (*Decision*). The proposed intervenors appeal from the court's denial. We affirm.

## I

Section 232 of the Trade Expansion Act of 1962 authorizes the President to restrict imports of goods to safeguard national security. 19 U.S.C. § 1862. Pursuant to this authority, in March 2018, "the President imposed a 25 percent ad valorem tariff on imports of certain steel products." *Decision*, 519 F. Supp. 3d at 1319 (citing Proclamation No. 9705, Adjusting Imports of Steel into the United States, 83 Fed. Reg. 11,625 (Mar. 8, 2018)). Domestic importers could request a tariff exclusion, however, either if the imported steel product was "not produced in the United States in a satisfactory quality," or "for a specific national security consideration." *Id.* (quoting Requirements for Submissions Requesting Exclusions, 83 Fed. Reg. 12,106, 12,110 (Mar. 19, 2018)). Likewise, "[a]ny individual or organization that manufactures steel articles in the United States" could then object to any such exclusion requests, providing domestic steel producers the opportunity to show that they either have or could have quickly produced a sufficient quantity of the same or similar quality product. *Id.*

at 1320 (quoting Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,058 (Sept. 11, 2018) (alteration in original)).

Plaintiffs-appellees, here, are domestic manufacturers or distributors who had imported steel products subject to this § 232 ad valorem tariff. *Id.* These importers sought exclusions from the tariff. *Id.* In response, several domestic steel producers objected to the exclusion requests, asserting that "they could satisfactorily produce all of, or sufficient substitutes for, the material that was the subject of the exclusion requests." *Id.* Commerce denied the exclusion requests, and the importers "paid the challenged duties and imported the steel products in question notwithstanding the exclusion denials." *Id.*

The importers then filed lawsuits alleging Administrative Procedure Act violations under the Court of International Trade's residual jurisdiction, *see* 28 U.S.C. § 1581(i), "contending that Commerce failed to consider relevant factors and evidence, failed to give adequate explanations for its decisions, and in some instances considered legally irrelevant factors." *Decision*, 519 F. Supp. 3d at 1321. The importers requested either that a refund be issued or that the case be remanded to Commerce for further proceedings. *Id.* The domestic steel producers, who had objected to the importers' tariff exclusion requests before Commerce, moved to intervene as party defendants in the importers' lawsuits.[1] They all "move[d] to intervene as a matter of

---

[1]    United States Steel Corporation sought to intervene in four cases, brought by California Steel Industries, Inc. (No. 21-15), North American Interpipe Inc. (No. 20-3825), Evraz Inc. NA and Evraz Inc. NA Canada (No. 20-3869), and AM/NS Calvert LLC (No. 21-5); Electralloy/G.O. Carlson sought to intervene in two cases,

CALIFORNIA STEEL INDUSTRIES, INC. v. US

right under [United States Court of International Trade] Rule 24(a)(2) (based on a claimed interest in the transactions at issue) and, alternatively, for permissive intervention under Rule 24(b)(1)(B) (based on a claimed shared defense)." *Id.* Proposed intervenor U.S. Steel also "move[d] for permissive intervention under Rule 24(b)(1)(A) (based on a claimed conditional right to intervene by statute)." *Id.* The Court of International Trade denied intervention in all six cases. *Id.* at 1335.

The court first addressed "the threshold question of the proposed intervenors' standing," and denied motions to intervene in four of the six cases for lack of standing. *Id.* at 1321–22. In the court's view, "Article III requires as a threshold matter that a proposed intervenor—regardless of the basis upon which intervention is sought—demonstrate independent constitutional standing insofar as the proposed intervenor seeks any relief that is different from that sought by the existing parties to the case." *Id.* at 1321. This means, the court explained, that the proposed intervenor must either show "its independent constitutional standing or its 'piggyback standing,' i.e., standing based on seeking the same relief sought by an existing party to the case." *Id.*

---

brought by Valbruna Slater Stainless, Inc. (No. 21-27), and Voestalpine High Performance Metals Corporation and Edro Special Steels, Inc. (No. 21-93); and Crucible Industries, LLC, Ellwood City Forge Company, and Ellwood Specialty Steel sought to intervene in the case brought by Voestalpine and Edro (No. 21-93). In addition, four members of the American Line Pipe Producers Association— American Cast Iron Pipe Company, Berg Steel Pipe Corporation, Berg Spiral Pipe Corporation, and Stupp Corporation—sought to intervene in their individual capacities in the case brought by Evraz (No. 20-3869), but they have not appealed the Court of International Trade's decision denying their motion to intervene.

at 1322 (citation omitted). Because "U.S. Steel [had] dis-claim[ed] seeking any relief separate from that sought by the government" in North American Interpipe's action (No. 20-3825) and in Evraz's action (No. 20-3869), the court found that U.S. Steel had "established its piggyback stand-ing." *Id.* But the court determined that none of the pro-posed intervenors had "address[ed], much less establish[ed], either their independent constitutional standing or their piggyback standing" in the remaining four cases (Nos. 21-5, 21-15, 21-27, 21-93). *Id.*

Having determined that U.S. Steel had standing, the court then considered whether it was entitled to interven-tion under Rule 24(a)(2), applying the following four-part test:

> (1) the motion must be timely; (2) the moving party must claim an interest in the property or transac-tion at issue that is "'legally protectable'—merely economic interests will not suffice"; (3) "that inter-est's relationship to the litigation must be 'of such a *direct* and *immediate* character that the interve-nor will either gain or lose by the *direct* legal oper-ation and effect of the judgment'"; and (4) "the movant must demonstrate that said interest is not adequately addressed by the government's partici-pation."

*Decision*, 519 F. Supp. 3d at 1323 (first quoting *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012); then quoting *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1562 (Fed. Cir. 1989)).[2] Applying this standard, the court

---

[2]     Although *Wolfsen* and *American Maritime* involved Court of Federal Claims Rule 24—rather than CIT Rule 24—the Court of International Trade determined that "the

found the motions timely but concluded that "they fail[ed] to satisfy the other three elements of the Federal Circuit's test for intervention as a matter of right under Rule 24(a)(2)." *Id.* at 1328.

The court found no legally protectable interests in Commerce's denials of the importers' § 232 exclusion requests. *Id.* at 1325–26. "The problem with [U.S. Steel's] arguments," the court explained, "is that upholding Commerce's exclusions will not provide the [proposed] intervenors with sales opportunities" since, "despite denial of the exclusion requests, U.S. Steel did not subsequently supply the products at issue to [the importers]." *Id.* at 1326. So "the only 'interest' identified by U.S. Steel in this matter is the indirect economic benefit U.S. Steel believes it would receive by ensuring that [the importers are] injured by unfair tariff treatment." *Id.*

The results here, the court determined, "would be the same even *if*, hypothetically, the imports in question were suspended and gathering dust in port warehouses pending the outcome of this litigation." *Id.* Thus, any gain would "be both indirect and contingent, resulting not from the direct effect of the judgment but instead from [the importers'] choice to purchase from the proposed intervenors rather than completing the imports." *Id.*

The court went on, because U.S. Steel seeks "the same relief as the government, their entry into these cases is presumptively barred unless they demonstrate that their

---

rationale of *Wolfsen* and *American Maritime* [is] directly controlling in the Court of International Trade" because "the Federal Circuit applied authorities that interpreted Federal Rule of Civil Procedure 24" and "[t]he relevant Court of Federal Claims rule is—like th[e] [CIT's] Rule 24—drawn verbatim from Federal Rule of Civil Procedure 24." *Decision*, 519 F. Supp. 3d at 1323 n.15.

participation could add some material aspect beyond what is already present." *Id.* at 1327 (cleaned up). The court concluded that U.S. Steel had made no such showing, having "assert[ed] only that the government's sovereign interest in maintaining the Section 232 exclusion process does not encompass their proprietary interests in these specific transactions." *Id.*

The court further observed that the proposed intervenors had contended that "they [could] make 'factual contributions' that w[ould] cure 'imperfect administrative records.'" *Id.* at 1328. But the court gave no weight to such contentions, having instead determined that any such "'factual contributions' would not 'add some material aspect to the case beyond what is already present'" since "judicial review is confined to the existing administrative records in these matters." *Id.* (quoting *Wolfsen*, 694 F.3d at 1318).

The Court of International Trade concluded that the proposed intervenors were not entitled to intervention as a matter of right under Rule 24(a)(2), *id.*, and also decided that they were not eligible for permissible intervention under Rule 24(b)(1), *see id.* at 1329–35.[3] The court thus denied the motions to intervene. The proposed intervenors appeal. "Denial of a motion to intervene is a final judgment and immediately appealable." *Wolfsen*, 695 F.3d at 1314. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

"This court has not previously identified the standard to be applied when reviewing a trial court's denial of a motion to intervene as of right." *Wolfsen*, 695 F.3d at 1314. The proposed intervenors and the government assert we should review a denial of intervention de novo. The importers disagree, contending that we should review for

---

[3]   The proposed intervenors do not challenge any permissive intervention determinations.

abuse of discretion and pointing out that we have "expressly noted" this in an earlier, unpublished opinion. Plaintiffs-Appellees' Answering Br. 11 (citing *Abbott Lab'ys v. Diamedix Corp.*, No. 94-1345, 1994 WL 782247, at *2 (Fed. Cir. July 26, 1994)). But we had noted, in *Wolfsen*, that the regional circuits "are split on the question, though slightly more courts favor de novo review." 695 F.3d at 1314. There, we found no need to decide the issue because we "would affirm under both proposed standards of review," and so "the question of the standard to apply [was] non-dispositive." *Id.* We reach the same conclusion here.

We review questions of standing de novo. *Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015).

## III

The Court of International Trade denied the following motions to intervene for lack of standing: U.S. Steel's motions to intervene in the cases brought by AM/NS Calvert (No. 21-5) and California Steel (No. 21-15); Electralloy/G.O. Carlson's motions to intervene in the cases brought by Valbruna (No. 21-27) and Voestalpine and Edro (No. 21-93); and Crucible's, Ellwood City Forge's, and Ellwood Specialty Steel's motion to intervene in the case brought by Voestalpine and Edro (No. 21-93). While the court found that U.S. Steel had standing in the remaining two cases—brought by North American Interpipe (No. 20-3825) and by Evraz (No. 20-3869)—the Court of International Trade still denied U.S. Steel's motions to intervene in those cases since U.S. Steel had not established it was entitled to intervention under Court of International Trade Rule 24(a)(2). The proposed intervenors challenge the Court of International Trade's denials, arguing that in all cases they both have standing and are entitled to intervene under Rule 24(a)(2).

Although we ultimately affirm the Court of International Trade's decision denying all of the motions to

intervene for lack of entitlement under Rule 24(a)(2), we begin by addressing the court's decisions on standing because standing is a threshold jurisdictional question. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648, 1650–51 (2017).

## A

The proposed intervenors contend that the Court of International Trade erred in concluding that they must establish standing to intervene. They also assert that, even if standing were necessary to intervene, the proposed intervenors have established such standing. Although we agree with the trial court that all of the intervenors must establish standing, we conclude that they did so here.

### 1

"For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester*, 137 S. Ct. at 1651. This means that, "at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Id.*

While the proposed intervenors admit that a *plaintiff*-intervenor must have standing to intervene, *see id.*, in their view, "it is unnecessary for prospective *defendant*-intervenors to establish Article III standing" since "intervention on the side of the defendant at the trial court level necessarily *does not* expand the claims at issue," Appellants' Opening Br. 17–18. They reason that this is because the plaintiff or plaintiff-intervenor is "the party invoking federal jurisdiction" who "bears the burden of establishing" standing. *Id.* at 18 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). So, since "[h]ere, the justiciable case or controversy between plaintiff and defendant satisfies Article III," the proposed intervenors assert that "a party seeking to intervene need not demonstrate that he has

standing." *Id.* at 18 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)). We disagree.

The proposed intervenors' only basis for distinguishing between plaintiff- and defendant-intervenors rests on the premise that intervenors' motivations to join a suit align with the motivations of the traditional parties to the case. Based on that premise, they argue that a defendant-intervenor should be treated like a defendant. But a defendant-intervenor does not enter litigation in the same way as a traditional defendant. Though it is true that "Article III standing is not a threshold determination that courts normally make before allowing a defendant to enter a case," this is because "[t]he standing inquiry is generally 'directed at those who invoke the court's jurisdiction,' and most defendants are pulled into a case unwillingly." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015) (citation omitted).

A defendant-intervenor does not fit the same mold as the traditional unwilling defendant. Rather, a defendant-intervenor actively seeks to participate in the resolution of a case in which the plaintiff did not bring a claim against or request any relief from the proposed intervenor. Thus, "where a party tries to intervene as another defendant," that defendant-intervenor must "demonstrate Article III standing." *Id.*

2

The proposed intervenors assert that the Court of International Trade erred in determining that they lacked standing in the suits brought by AM/NS Calvert (No. 21-5), California Steel (No. 21-15), Valbruna (No. 21-27), and Voestalpine and Edro (No. 21-93). In their view, "a simple comparison of the [g]overnment's prayer for relief with those [in the proposed intervenors'] Proposed Answers establishes that" the proposed intervenors and the government seek the same relief, thereby conferring standing

upon the proposed intervenors. Appellants' Opening Br. 19. We agree.

Because in each of these cases the proposed intervenors' requested relief is largely identical to the government's prayer for relief, the proposed intervenors have established piggyback standing.[4] *Compare* Appx4833 ("U.S. Steel respectfully requests that judgment be entered sustaining the decision of Commerce to deny [§] 232 steel tariff exclusions requested by Calvert, and granting such other and further relief as may be just and appropriate."), *and* Appx7232 (same), *with* Appx4883 (Government "requests that the Court enter judgment in its favor, order that the complaint be dismissed, and grant defendant such other and further relief as the Court may deem just and proper."), *and* Appx7297 (same); *see also* Appx9371, Appx11628, Appx11719, Appx11745 (Electralloy/G.O. Carlson, Ellwood City, Ellwood Specialty Steel, and Crucible requesting relief in the lawsuits brought by Valbruna or Voestalpine and Edro identical to the relief requested by U.S. Steel in the lawsuits brought by Calvert or California Steel).

---

[4]    Even if it were unclear whether the proposed intervenors requested additional relief beyond what the government requested, the appropriate action would have been for the Court of International Trade to request clarification from the parties before sua sponte raising and deciding the standing inquiry. *See Town of Chester*, 137 S. Ct. at 1652 & n.4 (finding that the proposed intervenors' statements "at best le[ft] it ambiguous whether" the proposed intervenor sought damages for itself or was simply seeking the same damages as the party it moved to join; noting that "[t]his confusion needs to be dispelled" and that the court is "not inclined to resolve it in the first instance"; vacating the judgment and remanding the case since "the Court of Appeals did not resolve this ambiguity").

B

Although the proposed intervenors have established standing, they must still identify a legally protectable interest to qualify as intervenors under Rule 24(a)(2). The proposed intervenors contend that they have a legally protectable interest in Commerce's denials of the importers' exclusion requests, considering the proposed intervenors' "administrative participation, direct economic stake, and position as intended beneficiaries" of the President's ad valorem tariff. Appellants' Reply Br. 1. They assert that (1) "participation in adversarial administrative proceedings bestows a Rule 24(a)(2) interest in the result obtained," *id.* at 8, (2) "actions to undo tariffs that specifically protect domestic producers give rise to economic interests that unfavorable judgments would impair," *id.* at 15, and (3) "judgments removing tariff protection may practically impair the interests of direct beneficiaries of those tariffs," *id.* at 22. We disagree.

Even if the proposed intervenors "were active administrative parties, consistent with Commerce's regulations," as they claim, *id.* at 10, this is an insufficient basis to find that the proposed intervenors have a legally protectable interest in this case. As the Court of International Trade correctly observed, § 232 permits Commerce to hear from domestic parties before considering whether to grant or deny an exclusion request, but it "does not require Commerce to do so, nor does it impose any requirement that Commerce—much less th[e] Court [of International Trade]—permit outsiders to voice objections to any exclusions that the Department might grant." *Decision*, 519 F. Supp. 3d at 1324. And Commerce's decision to hear such objections "is, in effect, an act of administrative grace that creates no protected legal interests." *Id.* at 1324–25. Likewise, "Commerce's administrative scheme implementing [§] 232 permits *any* domestic person or entity to voice objections to exclusions requests," but the statute "does not require Commerce to" hear from domestic entities. *Id.* at

1324–25. So, "[f]or purposes of Rule 24(a)(2), any scheme such as Commerce's here that effectively permits *anyone* to participate in administrative proceedings confers a legally protectable interest on no one." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (holding that Congress may not "convert the undifferentiated public interest in executive officers' compliance with the law into an individual right vindicable in the courts" (cleaned up))). That the proposed intervenors chose to seize on Commerce's administrative grace and object to the pertinent requests does not transform their participation during the administrative proceedings into a legally protectable interest during subsequent judicial proceedings. And the proposed intervenors' alleged economic interests cannot suffice either. *Wolfsen*, 695 F.3d at 1315 (explaining that "mere[] economic interests will not suffice" to establish that a proposed intervenor has a legally protectable interest).

Since the proposed intervenors failed to identify a legally protectable interest, as is required to establish intervention as of right under Rule 24(a)(2), the Court of International Trade rightly denied the motions to intervene. And without an identifiable, legally protectable interest, the proposed intervenors' arguments about the practicable impairment of their interests have no merit. *See Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) ("[T]he question of impairment is not separate from the question of existence of an interest.").

Further, the proposed intervenors must show that their "participation could add some material aspect beyond what is already present." *Wolfsen*, 695 F.3d at 1318. And they make no such demonstration here. The proposed intervenors admit that they seek the same relief as the government and emphasize only their potential "factual contributions"—given that they are better situated to prove their production capabilities compared to the government—which are irrelevant since the administrative

record is generally closed once before the judiciary. *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379–80 (Fed. Cir. 2009). Without more, the proposed intervenors fail to show that their participation could add any material aspect beyond what is already present.

## IV

The Court of International Trade should have found that the proposed intervenors established piggyback standing in all six cases before us on appeal. Notwithstanding this error, the court correctly determined that none of the proposed intervenors had identified a legally protectable interest. We accordingly affirm the Court of International Trade's decision denying the motions to intervene.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

_____

**CALIFORNIA STEEL INDUSTRIES, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

_____

2021-2172

_____

Appeal from the United States Court of International Trade in 1:21-cv-00015-MMB, Judge M. Miller Baker.

-------------------------------------------------

**NORTH AMERICAN INTERPIPE, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

———————————

2021-2180

———————————

Appeal from the United States Court of International
Trade in No. 1:20-cv-03825-MMB, Judge M. Miller Baker.

-------------------------------------------------

**EVRAZ INC. NA,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

———————————

2021-2181

———————————

Appeal from the United States Court of International
Trade in No. 1:20-cv-03869-MMB, Judge M. Miller Baker.

-------------------------------------------------

**AM/NS CALVERT LLC,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

————————————

2021-2182

————————————

Appeal from the United States Court of International
Trade in No. 1:21-cv-00005-MMB, Judge M. Miller Baker.

------------------------------------------------

**VALBRUNA SLATER STAINLESS, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**ELECTRALLOY/G.O. CARLSON,**
*Defendant-Appellant*

————————————

2021-2183

————————————

Appeal from the United States Court of International Trade in No. 1:21-cv-00027-MMB, Judge M. Miller Baker.

------------------------------------------------

**VOESTALPINE HIGH PERFORMANCE METALS CORP., EDRO SPECIALTY STEELS, INC.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**ELECTRALLOY/G.O. CARLSON, CRUCIBLE INDUSTRIES LLC, ELLWOOD CITY FORGE COMPANY, ELLWOOD SPECIALTY STEEL,**
*Defendants-Appellants*

————————————

2021-2185

————————————

Appeal from the United States Court of International Trade in No. 1:21-cv-00093-MMB, Judge M. Miller Baker.

————————————

NEWMAN, *Circuit Judge*, dissenting.

This appeal concerns the right of certain domestic steel producers to intervene in the appeal of tariff proceedings (here a tariff whose purpose is to support domestic steel manufacturing capacity for products critical to national security) by imposing a tariff on corresponding imported steel. The court now denies these domestic steel producers

the right to participate in the appeal to the Court of International Trade concerning requests for relief from those tariffs.[1] The panel majority rules that although these domestic steel producers have standing to intervene, they do not have a legally protectable interest. Maj. Op. at 17. However, the authorizing statute contemplates participation by affected domestic industries, in service to the national security purposes of this statute. From the denial of the requested interventions, I respectfully dissent.

## BACKGROUND

Presidential Proclamation No. 9705, *Adjusting Imports of Steel into the United States*, was issued in 2018 and declared that:

> [S]teel articles are being imported into the United States in such quantities and under such circumstances as to threaten to impair the national security of the United States.

83 Fed. Reg. at 11,625 (Mar. 8, 2018). The Proclamation, applying Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, imposes:

> a global tariff of 24 percent on imports of steel articles in order to reduce imports to a level that the Secretary assessed would enable domestic steel producers to use approximately 80 percent of existing domestic production capacity and thereby

---

[1] *North American Interpipe, Inc. v. United States, No. 03825; Evrz Inc. NA v. United States, 20-03869; AM/NS Calvert LLC v. United States, 21-0005; California Steel Indus., Inc. v. United States, 21-00015; Valrbuna Slater Stainless, Inc. v. United States, 21-00027; and Voestalpine High Performance Metals Corp. v. United States*, 519 F. Supp. 3d 1313 (Ct. Int'l Tr. 2021).

achieve long-term economic viability through increased production.

*Id.* The Commerce Department is charged with administering the tariff. *Id.*

Commerce established a procedure whereby domestic companies importing the listed steel products can seek exclusion from the Section 232 tariff. 83 Fed. Reg. at 46,057–58 (Sept. 11, 2018) (allowing "individuals or organizations located in the United States . . . using steel in business activities" to file tariff exclusion requests). Importers seeking such tariff exclusion are required to demonstrate that steel produced in the United States cannot meet their needs because the specific item is not produced in adequate quality or amount. *Id.*

California Steel and other importers (collectively, "Cal. Steel") sought exclusion from the Section 232 tariff for hundreds of steel items during the 2018–2020 period. Cal. Steel asserted that domestic producers were unable to meet their needs for particular products or purposes. U.S. Steel and other domestic steel producers (collectively, "U.S. Steel") opposed those exclusion requests on the ground that domestic producers could provide all the needed steel, and that the Section 232 tariff should be applied.

When Commerce denied Cal. Steel's requests for tariff exclusion, the importers paid the duties, and now seek refunds in the Court of International Trade ("CIT"). U.S. Steel seeks to intervene under CIT Rule 24, which allows intervention when economic interests are affected and the intervenor's interest is not adequately represented by any party to the action. The CIT denied intervention, leading to this appeal.

## DISCUSSION

My colleagues hold that although the would-be intervenors have standing, they do not have a legally protectable

interest. In my view, the requested intervention should be permitted.

United States Steel Corp. and other domestic steel producers participated as objectors[2] to requested tariff exclusions, having the right to participate in the Commerce proceedings. 83 Fed. Reg. at 12,111 (Mar. 19, 2018) ("Any individual or organization in the United States may file objections to steel exclusion requests . . . ."). An objector does not lose that right when appeal is taken. Although the panel majority states that the regulation does not "effectively permit[] *anyone* to participate" in a subsequent appeal, Maj. Op. at 17, all of these would-be intervenors were participants in the Commerce proceeding and are directly affected by the tariff. U.S. Steel argues that it has a legally protectable interest and the right to participate under CIT Rule 24 as well as under the statute governing this tariff, 19 U.S.C. § 1862.

Intervention under CIT Rule 24 requires that the movant "claim some interest in the property affected by the case" where "that interest's relationship to the litigation must be 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment.'" *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012) (quoting *Am. Marine Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (emphases in original)). "These requirements are construed in favor of intervention." *Wolfsen*, 695 F.3d at 1315. U.S. Steel argues that Rule 24 provides objectors with the

---

[2]    The parties to tariff request proceedings are referred to as "requesters" or "objectors" in the administrative proceedings. 15 C.F.R. § 705 Supp. 1(b).

right to defend the results of a proceeding in which it participated and by which it is affected.

Intervention by non-parties has been analyzed in a variety of circumstances. *See, e.g.*, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991), where the court allowed intervention in the district court in a dispute over the constitutionality of a regulation. The Fourth Circuit explained that because the court's enjoining of parts of an environmental regulation would "impede Sierra Club's ability to protect its interest in the [related] administrative proceeding," Sierra Club had the right to intervene. *Id.* at 779.

CIT Rule 24 does not authorize intervention as of right when the "existing parties adequately represent [the intervenor's] interest." However, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Here, the United States explicitly "take[s] no position as to whether the United States adequately represents the manufacturers' interests." Gov't Br. 23. This statement rebuts the "presumption that the government as sovereign adequately represents the interest of citizens concerning matters that invoke 'sovereign interests.'" *Wolfsen*, 695 F.3d at 1319 (Reyna, J., concurring). Nor can the government be charged with knowledge of the economic interests of the intervenors, sufficient to adequately represent those interests.

The multiplicity of imported products and the impact on the various domestic producers weigh in favor of permitting intervention. The U.S. Steel objectors have clear economic interests in these tariff exclusion requests, and meet the requirements of Rule 24(a)(2) that they have "an interest relating to the property or transaction that is the

subject of the action," and no "existing parties adequately represent that interest."

Fair judicial process favors permitting affected voices to be heard. The domestic producers meet the intervention standards of Rule 24. I discern no reason to deny intervention to the entities that were objectors and are directly affected by the imposition of this tariff. From my colleagues' contrary ruling, I respectfully dissent.